UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 5:22-CR-10-DCR-MAS-3 |
| v. ) | |
| ) | |
| SAVANNAH ASBERRY, ) | |
| ) | |
| Defendant. ) | |

**DETENTION OPINION & ORDER**

The Indictment alleges that Defendant Savannah Asberry ("Asberry") conspired to distribute 40 grams or more of a fentanyl mixture and 50 grams or more of a methamphetamine mixture in violation of 21 U.S.C. § 846, possessed with intent to distribute 40 grams or more of a fentanyl mixture, 50 grams of more of a methamphetamine mixture, and cocaine, in violation of 21 U.S.C. § 841(a)(1), and possessed a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A). [DE 60]. The United States orally sought detention under 18 U.S.C. § 3142(f)(1)(C) and (E), [DE 78], and the Court conducted a detention hearing on July 29, 2022. [DE 96]. Per Federal Rule of Appellate Procedure 9(a) and for the reasons discussed in this opinion, the Court grants the United States' motion for detention.

      **I.**     **BRA FRAMEWORK**

Based on the charges, a detention presumption arises under the BRA as to both nonappearance and danger risk. 18 U.S.C. § 3142(e)(3)(A). The BRA and *United States v. Stone*, 608 F.3d 939, 945–46 (6th Cir. 2010) frame the resulting inquiry. The presumption imposes on the defendant a threshold "burden of production"; in response, "he must introduce at least some

1

evidence" that he poses neither a flight nor a danger risk. *Stone*, 608 F.3d at 945; *see also United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986) (imposing a responsive burden on the defendant to produce "some evidence that he will not flee or endanger the community if released"); *United States v. Hernandez*, No. 1:02-CR-006, 2002 WL 1377911, at *2 (E.D. Tenn. Feb. 27, 2002) (requiring the defendant to "produc[e] probative, credible evidence to rebut the presumption and support his contention that he will appear . . . and [that] he does not pose a danger"). The production burden "is not heavy," and the Government retains the ultimate burden of persuasion. *Stone*, 608 F.3d at 945. An unrebutted presumption requires detention. A rebutted presumption remains a pro-detention statutory factor. *See id.* ("The presumption remains as a factor because it . . . reflects Congress's substantive judgment that particular classes of offenders should ordinarily be detained prior to trial.").

Where a defendant rebuts the presumption, the burden shifts back to the United States. Detention premised on nonappearance requires preponderant evidence that no conditions can reasonably assure the defendant's future appearance. *See, e.g.*, *United States v. Patriarca*, 948 F.2d 789, 793 (1st Cir. 1991); *United States v. Curry*, No. 6:06-CR-82-DCR, 2006 WL 2037406, at *6 (E.D. Ky. July 18, 2006). Danger-based detention, however, demands clear and convincing evidence that no combination of conditions will reasonably ensure community safety. 18 U.S.C. § 3142(f). The analyses are distinct. Conditions that sufficiently target nonappearance risk may not adequately address danger potential. *See United States v. Mercedes*, 254 F.3d 433, 436-37 (2d Cir. 2001). Further, condition effectiveness inherently hinges on a defendant's predicted good faith compliance. *See United States v. Tortora*, 922 F.2d 880, 887 (1st Cir. 1990) (characterizing predicted compliance as critical release component); *United States v. Hir*, 517 F.3d 1081, 1092 (9th Cir. 2008) (noting the "critical flaw" in a set of proposed release conditions: "In order to be

effective, they depend on [the defendant's] good faith compliance."); *id.* at 1093 n.13 (observing that, barring a "replica detention facilit[y]," the success of any condition combination necessarily "hinge[s] on [the defendant's] good faith compliance").

Evidence rules do not apply to detention hearings. 18 U.S.C. § 3142(f). The focus is simply evidentiary reliability and accuracy. *See, e.g.*, *United States v. Webb*, 149 F.3d 1185 (Table), No. 98-1291, 1998 WL 381686, at *1 (6th Cir. June 22, 1998). Given hearing informality, the Court properly considers a wide range of proof. The nature and quality of proof, though, impacts its probative value and weight in the detention calculus. The § 3142(g) factors ultimately drive the overarching analysis.

## II.  ANALYSIS

Asberry rebutted the presumption as to both risk of nonappearance and risk of danger. However, the United States met its burden on both issues, so detention is mandated under the BRA. The United States showed by a preponderance of the evidence that no combination of conditions can reasonably assure that Asberry will appear at the proceedings in this case. It also established by clear and convincing evidence that no conditions can reasonably assure community safety. As such, the Court grants the United States' motion for detention.

### A.  RISK OF NONAPPEARANCE

As a threshold matter, the Court finds that Asberry put forth sufficient evidence to overcome the presumption as to risk of nonappearance. Specifically, Asberry asserted by proffer that she is a life-long resident of Lexington, has significant family ties to that location, and that, if she were to be released, she could reside with her sister in Lexington. [Hearing Recording at 1:51 - 3:08]. She also asserted that, although she has a long-standing substance use disorder, she is now sober and would submit to the condition that she be drug-tested if released. [*Id.*, at 3:30 – 4:02]. Moreover, Asberry asserted by proffer that, although her criminal history record contains a number

3

of failures to appear, many of those were the result of either confusion about the date of the hearing or technological issues she experienced while attempting to appear remotely for court proceedings during the Covid-19 pandemic, and that her failures to appear were not intentional. [*Id.*, at 4:05 – 6:04]. Asberry also asserted that she had been aware of the ongoing investigation into her drug-trafficking activity since April of 2021, when her co-defendant, Michael Byrd, was arrested, and that she made no effort to flee during this time. [*Id.*, at 36:10 – 37:05]. These facts are sufficient to overcome the light presumption burden. *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010) (discussing that the presumption imposes on the defendant a threshold "burden of production"; in response, "he must introduce at least some evidence" that he poses neither a flight nor a danger risk).

In response, the United States presented evidence by both proffer and explanatory testimony from Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") Special Agent Isaac Waters to demonstrate Asberry's risk of nonappearance and danger. Relevant to the risk of nonappearance, the United States noted that Asberry faces a potentially lengthy sentence if convicted of either the charged drug or firearm charges, and she has significant contacts in Louisville. [*Id.*, at 41:40 – 42:28]. The United States also argued that Asberry has a significant history of failing to appear for various state court charges from 2015, 2018, and 2020 through 2022. [*Id.*, at 42:34 – 44:20].

On balance, the Court concludes the United States has proved by a preponderance of evidence that Asberry presents a serious risk of nonappearance if released pending trial. Asberry's Pretrial Services Report ["PSR"] indicates that she has consistently failed to appear in state court proceedings. Asberry failed to appear twice in 2014, once in 2018, twice in 2020, once in 2021, and once in April of 2022. [PSR at 4-5]. While the charges for which Asberry failed to appear

4

involve relatively minor traffic violations or shoplifting crimes, [*see id*.], the fact that Asberry failed to appear on at least seven different occasions itself indicates a risk of nonappearance in this case. *See United States v. Gibson*, 382 F. Supp. 3d 955, 964 (N.D. Ind. 2019) (finding that "multiple failures to appear" were aggravating). Moreover, Special Agent Waters testified that, Asberry provided a false name to law enforcement officers on at least two separate occasions during the course of the investigation into her drug activity. [Hearing Record at 18:30 – 19:40, 23:00 – 23:30]. *See United States v. Vysniuaskas*, No. 10-20717, 2011 WL 5433960, at *9 (E.D. Mich. Nov. 9, 2011) (citing as a flight risk indicator the defendants' "use of aliases allowed [that] them to avoid detection by law enforcement").

In addition, Asberry's drug-trafficking charges themselves indicate a risk of flight or nonappearance. *See United States v. Downsbrough*, No. 3:13-CR-61, 2013 WL 2447858, at *1 (E.D. Tenn. June 5, 2013) (citing *United States v. Stone*, 608 F.3d 939, 947 n.6 (6th Cir. 2010) (noting that Congress has attached a presumption to those types of crimes, such as drug trafficking, which indicate a "strong probability" that the perpetrator will flee)). Asberry faces a lengthy sentence if convicted of either her drug-trafficking or firearm charges. *See United States v. Shuklin*, No. 19-4171, 2020 WL 2992522, at *1 (6th Cir. Mar. 18, 2020) (observing that "significant penalties," such as a maximum of 20 years in prison, "provide a strong incentive to flee"). And, finally, Asberry has a recent history of substance use, having an escalating habit of using heroin and methamphetamine during the two months preceding her arrest. [PSR at 3]. *See U.S. v. Valentin-Cintron*, 656 F. Supp. 2d 292, 296 (D.P.R. 2009) ("As a frequent drug user defendant constitutes a 'flight risk.'") (citing The Federal Bail and Detention Handbook and S. REP. NO. 225, 98th Cong. 1st Sess. 23, nn. 66, 68 (1983)).

Having found that the United States demonstrated that Asberry poses a risk of nonappearance, the Court also finds that no combination of conditions can sufficiently mitigate that risk.  Asberry's lengthy history of failing to appear in state court and her daily habit of substance use during the two months preceding her arrest create a high risk of nonappearance, even accounting for Asberry's willingness to submit to drug-testing conditions, inpatient treatment, and her ability to reside with a family member if released.  As such, the Court finds by a preponderance of the evidence that no condition or combination of conditions can reasonably assure the Court that Asberry will appear as required. As such, the BRA mandates detention based on the risk of nonappearance.

**B.**     **RISK OF DANGER**

Though the Court finds pretrial detention is warranted based on Asberry's risk of nonappearance, the Court will analyze danger-based detention in the interest of completeness. Asberry overcame the presumption of detention as to danger risk by asserting by proffer that there was no indication that she engaged in the alleged criminal activity outside of the direction of her co-defendant, Michael Byrd, and her willingness to submit to the condition that she have no contact with Byrd if released.  [Hearing Record at 38:00 – 38:50].  However, the United States has shown by clear and convincing evidence that Asberry's risk of danger proves an independent basis for pretrial detention under the BRA.

    **1.**     **Nature and Circumstances of the Offense**

The first BRA factor is the "nature and circumstances of the offense charge, including whether the offense . . . involves . . . a controlled substance [or] firearm[.]" 18 U.S.C. § 3142(g)(1). The nature and circumstances of Asberry's current offenses—conspiracy to distribute and possession with intent to distribute methamphetamine, fentanyl, and cocaine, and possession of a firearm in furtherance of a drug-trafficking crime—strongly favors detention.

6

Asberry was arrested after officers conducted a traffic stop of her vehicle and uncovered 13.8 grams of cocaine, 60.6 grams of fentanyl, 56 grams of methamphetamine, $490 in cash, and a loaded Glock 9mm handgun. [Hearing Record at 27:40 – 28:21]. Possession with intent to distribute methamphetamine and fentanyl are exceptionally dangerous offenses that pose a serious risk of harm to the community. *Stone.*, 608 F.3d at 947 n.6 ("And our Court routinely affirms, on dangerousness grounds, the pre-trial detention of run-of-the-mill drug dealers, even without any indication that the defendant is engaged in violence . . . . To be sure, drug trafficking is a serious offense that, in itself, poses a danger to the community."). And as noted, the detention presumption stemming from that charge does not vanish, even where, as here, the defendant overcomes the initial presumption that he poses a danger to society. *Stone*, 608 F.3d at 945.

Moreover, the large quantity of drugs found in Asberry's possession at the time of her arrest further increases her risk of danger to the community. *See United States v. Santiago-Pagan*, No. 1:08-CR-0424-01, 2009 WL 1106814, at *7 (M.D. Pa. Apr. 23, 2009) (concluding that the defendant's alleged involvement in the distribution of "a large quantity of narcotics cuts strongly against his motion for release pending trial" because "[t]he seriousness of the crimes alone . . . allows the court to draw the inference that defendant will simply continue his alleged narcotics activity if released") (collecting supportive cases). Likewise, Asberry's possession of a loaded firearm while engaged in alleged drug trafficking increases the risk of danger to the community. *See United States v. Flowers*, No. 3:05-CR-72, 2005 WL 1981364, at *4 (E.D. Tenn. Aug. 17, 2005) (observing that the "sale of drugs [ ] establish[es] a significant danger" and "[t]he addition of guns to the equation" would only increase it).

Asberry's charges and the circumstances surrounding her alleged crimes indicate a high risk of danger to the community, so this factor weighs heavily towards detention.

### 2. Weight of the Dangerousness Evidence

The second factor gauges "the weight of the evidence against the person." 18 U.S.C. § 3142(g)(2) (directing courts to consider "the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings" and whether, at the time of the current offense the person was on probation or pretrial release). "This factor goes to the weight of evidence of dangerousness, not the weight of the evidence of defendant's guilt." *Stone*, 608 F.3d at 948.

The weight of evidence against Asberry relevant to danger firmly favors detention. At the detention hearing, Special Agent Waters detailed a high-level drug-trafficking conspiracy conducted by Asberry and her co-defendants, Michael and Je'Von Byrd. On April 6, 2021, Lexington Police narcotics detectives conducted surveillance on Michael Byrd and Savannah Asberry's apartment in Lexington and observed suspected narcotics activity. [Hearing Record at 11:05 - 11:51]. The next day, detectives seized from Michael Byrd's vehicle a stolen Glock firearm and 4.6 kilograms of a mixture containing fluorofentanyl and fentanyl. [*Id.*, at 11:55 – 12:50]. Law enforcement then executed a search warrant on Michael and Savannah's apartment. [*Id.*, at 13:00 – 13:10]. Savannah answered the door and told officers that she was the only one present at the residence, although officers later learned that another individual suspected of drug-trafficking fled through a window as the search was being conducted. [*Id.*, at 13:10 – 13:20, 14:02 – 15:05]. The search yielded a significant amount of drug-trafficking evidence, including fentanyl, suspected marijuana., three firearms, and drug-trafficking paraphernalia. [*Id.* at 13:55 – 14:02]. Officer's located Asberry's purse in the residence, which contained $1,515 in cash. [*Id.* at 15:40 – 15:55]. Asberry was not arrested at this time. [*Id.* at 16:25 – 26:30].

8

Then on April 29, 2022, Lexington Police officers attempted to speak with Michael after they observed him standing outside of Asberry's vehicle. [*Id*., at 21:00 – 21:47]. Byrd took off running and threw approximately three ounces of fentanyl over a fence. [*Id*., at 21:50 – 22:10]. Officers then arrested Michael. [*Id*., at 22:10 – 22:15]. Michael Byrd and Asberry were also living together at this time. [*Id*., at 23:05 – 23:12].

After Michael was arrested on April 29, 2022, law enforcement monitored multiple jailhouse phone conversations between him and Asberry in which the two spoke in loose code about drug trafficking. [*Id*., at 24:40 – 25:20]. Specifically, Michael advised Asberry on how to continue the drug trafficking operation, including how to prepare the drugs and how much money to charge. [*Id*., at 25:22 – 25:35]. Asberry discussed how much money she was making by drug-trafficking and how much money she hoped to make in the future drug-trafficking. [*Id*., at 25:40 – 25:50].

By monitoring Michael and Asberry's jailhouse phone calls, Lexington Police detectives learned that Asberry planned to go to Louisville to receive a load of drugs. [*Id*. at 26:50 – 27:10]. On May 6, 2022, officers observed through GPS monitoring Asberry make a trip to Louisville. [*Id*. at 27:12 – 27:31]. On her way back to Lexington, officers performed a traffic stop on Asberry's vehicle, and a K-9 drug dog alerted to the presence of drugs in the vehicle. [*Id*. at 27:40 – 28:00]. Officers searched the vehicle and uncovered 13.8 grams of cocaine, 60.6 grams of fentanyl, 56 grams of methamphetamine, $490 in cash, and a loaded Glock 9mm handgun. [*Id*. at 28:01 – 28:21]. Officers later learned that, during the search of the vehicle, Asberry called Michael and admitted to him that she had a large amount of drugs and a gun in her vehicle. [*Id.* at 28:40 – 29:20].

9

In sum, Special Agent Waters presented evidence that Asberry was intimately involved in a high-level drug-trafficking conspiracy. Significantly, Asberry was undeterred by Michael's arrest. Instead, she allegedly fully assumed operation of the drug-trafficking enterprise, continuing to traffic a large amount of fentanyl, methamphetamine, and cocaine. This factual backdrop indicates that the weight of evidence against Asberry relevant to danger is great, so this second factor weighs heavily in favor of detention.

### 3. History and Characteristics

The third BRA factor considers the history and characteristics of the defendant. 18 U.S.C. § 3142(g)(3) (directing courts to consider "the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings" and whether, at the time of the current offense the person was on probation or pretrial release).

Setting the current charges aside, Asberry's criminal history contains little evidence suggesting that she is dangerous. Her criminal history consists only of traffic charges and a single charge for theft by unlawful taking. [PSR at 4-5]. That said, the Court cannot ignore that Asberry appears to have been involved in a high-level drug conspiracy for at least the year preceding her arrest and that she allegedly continued the conspiracy despite Michael's arrest. The third factor, at best, remains a neutral consideration that favors neither release nor detention based on risk of danger.

### 4. Nature and Seriousness of the Danger Risk

The fourth and final factor is "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g)(4). In this case,

this factor overlaps with consideration of the second BRA factor, the weight of the evidence against Asberry indicating danger.

As the Court discussed in its analysis of the second BRA factor, the risk of danger posed to the community by Asberry's continued drug trafficking is significant, especially given the large quantity of drugs Asberry is alleged to have possessed and intended to distribute. *See United States v. Santiago-Pagan*, No. 1:08-CR-0424-01, 2009 WL 1106814, at *7 (M.D. Pa. Apr. 23, 2009) (concluding that the defendant's alleged involvement in the distribution of "a large quantity of narcotics cuts strongly against his motion for release pending trial" because "[t]he seriousness of the crimes alone . . . allows the court to draw the inference that defendant will simply continue his alleged narcotics activity if released") (collecting supportive cases). And the fact that Asberry's current drug-trafficking charges involved a firearm demonstrates that her drug-trafficking could have dire consequences if continued. Moreover, Asberry's willingness to continue the drug-trafficking conspiracy despite Michael's arrest further indicates that the risk that she will revert to drug-trafficking if released is increased. *See United States v. Pina-Aboite*, 97 F. App'x 832, 836 (10th Cir. 2004) (emphasizing that "the danger-to-the-community factor is simply about physical violence; the risk that a defendant will continue to engage in drug trafficking constitutes a danger to the community").

The risk of danger to the community posed by releasing Asberry is simply too great, and this final factor tips decidedly in favor of detention.

### 5. Availability of Conditions Addressing Danger Risk

Finally, for the reasons discussed, the Court finds that Asberry presents a high risk of continuing to engage narcotics or firearms-related crimes if release. As such, her release presents a serious threat to community safety. While Asberry asserts that, if released, she would reside with her sister or another family member, would submit to random drug testing, and the condition

11

that she have no contact with her co-defendant, Michael Byrd, the Court is unconvinced that those release conditions would reasonably quell the risk of community danger that Asberry's release would create. This is especially true given the nature of Asberry's charged drug-trafficking crimes, which permits stationary involvement and discrete activity. *See, e.g.*, *United States v. Nova*, No. CR 16-060-02 S, 2016 WL 6471205, at *2 (D.R.I. Nov. 1, 2016) (finding that electronic monitoring and home detention conditions would not be effective to mitigate danger where the defendant could easily participate in the charged heroin distribution scheme from his home).

The Court finds that the United States has shown, by clear and convincing evidence, that no conditions can reasonably assure the safety of others or the community. Accordingly, detention is also warranted based on Asberry's risk of danger to the community.

### III.  CONCLUSION

In sum, the Court finds that the United States proved by a preponderance of the evidence that Asberry is an irremediable nonappearance risk and proved by clear and convincing evidence that she poses a danger to the community that cannot be mitigated with conditions. Therefore, the BRA mandates that Asberry remain in detention pending trial.

Accordingly, the Court grants the United States' oral detention motion. The parties may appeal this Order under the terms of 18 U.S.C. § 3145(a).

Entered this 11th day of August, 2022.

